AO 106 (Rev. 01/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO
DEC 07 2015
MATTHEW J. DYKMAN
CLERK

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>The property to be searched is a SAMSUNG wireless telephone, MODEL: SPH-L710, FCC ID: A3LSPHL710 in the custody of the ATF. | )<br>)<br>)  Case No.  15mr806<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the __Albuquerque, NM__ District of __New Mexico__ *(identify the person or describe property to be searched and give its location)*:

> The property to be searched is a SAMSUNG wireless telephone, MODEL: SPH-L710, FCC ID: A3LSPHL710 in the custody of the Bureau of Alcohol, Tobacco, Firearms, and Explosives Albuquerque Field Office.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

> SAMSUNG wireless telephone, MODEL: SPH-L710, FCC ID: A3LSPHL710 is believed to conceal evidence of violations of Title 18 U.S.C. 922 - Federal Firearms Laws.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of __18__ U.S.C. § __922 (g) (1)__ , and the application is based on these facts:  See Attached Affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Lisa Gaul, Special Agent ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 12/7/15

_____
*Judge's signature*

City and state: Albuquerque, NM

Steven Yarbrough, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF SAMSUNG WIRELESS TELEPHONE, MODEL: SPH-L710, FCC ID: A3LSPHL710, LOCATED AT THE BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, ALBUQUERQUE FIELD OFFICE. | Case No. |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Lisa Gaul, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Fed. R. Crim. P. 41 for a search warrant authorizing the examination of property, to wit a wireless telephone, which is currently in law enforcement possession and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). I have been employed with ATF since March of 2014. I am an investigative, or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510 (7), in that I am an officer of the United States who is empowered by law to conduct investigations and make arrests for the offenses enumerated in Title 18 and 26, United States Code.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

1. The property to be searched includes the stored data contents of a SAMSUNG WIRELESS TELEPHONE, MODEL: SPH-L710, FCC ID: A3LSPHL710 wireless phone ( herein referred to as DEVICE), seized from Barry ROMERO, pursuant to a Federal search warrant, executed on November 10, 2015. This data includes but is not limited to: text messages describing probable past or future firearm transactions; recorded voice messages relating to probable past or future firearm transactions, and names and telephone numbers, dates of calls, and alias or names of individuals, identifying persons involved in illegal firearms transactions. This DEVICE is stored at a temporary evidence storage safe located in the ATF Albuquerque Field Office.

2. The applied-for warrant would authorize the forensic examination of the DEVICE to include S/D card card, for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

1. On November 6, 2015, members of the United States Marshal's Southwest Fugitive Investigative Team (SWIFT) were conducting surveillance at 306 Becker Ave, Belen, New Mexico, based on information that a wanted fugitive, Barry ROMERO, was residing at the residence with his girlfriend, Jamie Carrasco. Your Affiant observed ROMERO arrive at the residence in a Grey Chevrolet Impala with an unidentified male. Your Affiant observed ROMERO walk into the residence with the unidentified male for a short period of time and then walk outside the residence with the unidentified male until the

male left. Your Affiant observed ROMERO walk to the white mailbox and check for mail and then walk into the residence. Your Affiant observed Jamie Carrasco, ROMERO's girlfriend, arrive in a white 1997 Toyota Camry, license plate 178PTL that is registered to her and go inside the residence.

2. On November 10, 2015, members of the US Marshals' SWIFT began conducting surveillance at 306 Becker Ave, Belen, NM at approximately 6:00 AM. Between 7:00 AM and 7:20 AM, members of the US Marshals' SWIFT observed ROMERO exit the residence and turn on the white Toyota Camry and open up the gate in front of the residence. At approximately 7:20 AM, Carrasco left the residence in the white Toyota Camry. At approximately 7:30 AM, members of the US Marshals' SWIFT, knocked and announced "Police" at 306 Becker Ave. No one answered the door and after a reasonable amount of time, members of the US Marshals' SWIFT forced entry into the residence. ROMERO was arrested inside the residence without incident. ROMERO made a voluntary statement that he was surprised members of the US Marshals' SWIFT were looking for him when he only had four (4) months left on his probation.

3. During a protective sweep of the residence, members of the US Marshals' SWIFT and your Affiant observed an open safe in the living room with two (2) firearm holsters and a magazine with ammunition. Your Affiant also observed what appeared to be drug paraphernalia and narcotics inside a glass jar on a table in the living room. In the back bedroom, your Affiant observed in plain view body armor hanging over the closet door, three (3) gun cases, gun cleaning fluid and a box of 9mm Luger caliber ammunition.

4. Based on your Affiant's belief that firearms and ammunition could be located inside the residence, your Affiant applied for a Federal search warrant for 306 Becker Ave., Belen, NM. On November 10, 2015, a Federal search warrant was approved in the United States District Court for the District of New Mexico for 306 Becker Ave., Belen, NM.

5. On November 10, 2015, your Affiant and members of the US Marshal's SWIFT executed a Federal search warrant on 306 Becker Ave., Belen, NM . Found inside the residence was a Glock model 17, 9mm caliber semi-automatic pistol bearing serial number YCN964, one (1) magazine loaded in the Glock pistol with one (1) round of Starline brand 9mm caliber ammunition and seventeen (17) rounds of Winchester brand 9mm Luger caliber ammunition, one (1) box of ammunition containing four (4) rounds of Winchester brand 9mm Luger caliber ammunition and seven (7) rounds of Dynamic Research Technologies brand 9mm Luger ammunition, one (1) thirty-one (31) round magazine loaded with nine (9) rounds of Winchester brand 9mm Luger caliber ammunition, two (2) rounds of Hornady brand 9mm Luger caliber ammunition, one (1) round of Giulio Fiocchi brand 9mm Luger caliber ammunition, seven (7) rounds of Starline brand 9mm Luger caliber ammunition and fourteen (14) rounds of Perfecta/Fiochhi brand 9mm Luger caliber ammunition, one (1) seventeen (17) round magazine loaded with eight (8) rounds of Starline brand 9mm Luger caliber ammunition, one (1) round of Hornady brand 9mm Luger ammunition and eight (8) rounds of Dynamic Research Technologies brand 9mm Luger ammunition and stolen Body Armor, Manufacturer: PAI Protective Armor International, Serial Number: 018694.

6. Your Affiant located the DEVICE inside the living room of 306 Becker Ave. during the search warrant. The DEVICE was in plain view on a clear glass coffee table.

7. Your Affiant learned that New Mexico State Police Agent J.V. interviewed ROMERO after his arrest. Agent J.V's interview with ROMERO was recorded and Agent J.V. read ROMERO his Miranda warnings, which he acknowledged and agreed to talk. ROMERO stated to Agent J.V that he is aware that he had an arrest warrant for failing to check in on his parole. ROMERO stated he did not touch the Glock handgun that day, November 10, 2015 and has never touched it. ROMERO stated he knows it is Carrasco, his girlfriend's, gun and he has no business touching her gun. ROMERO stated to Agent J.V. that Carrasco may have been mistaken as to where she said she placed the handgun. ROMERO requested a lawyer after this statement and all questioning of him was stopped.

8. Your Affiant and NMSP Agent J.V. interviewed Jamie Carrasco, ROMERO's girlfriend at her place of work in Albuquerque, NM. Carrasco was read her Miranda warnings and she agreed to speak. Carrasco stated that the Glock pistol is hers and she purchased it for her safety. She stated that she keeps the pistol locked up because she has a child and only she has the key for it. She stated that ROMERO does not have access to the pistol and his DNA should not be on it. During the execution of the search warrant, the safe was found open on the living room floor and a spare key for the safe was found on a key chain on the back of the front door. Carrasco stated that the DEVICE is hers and ROMERO's, but he primarily changes the passcode on the phone so her child cannot use it. The DEVICE was located at 306 Becker Ave, when only ROMERO was at the residence.

9. Based on your Affiant's training and experience as a law enforcement officer, your Affiant is aware that individuals engaging in criminal activity, associated with firearms, regularly store and maintain information associated with such illegal activity on their

personal cell phones. Further, your Affiant knows that individuals conspire to commit crime and conceal criminal activity through cell phone communications.

10. The aforementioned DEVICE is currently in the lawful possession of ATF having been seized pursuant to a Federal search warrant. Therefore, while ATF might already have all necessary authority to examine the device, your affiant seeks this additional warrant out of an abundance of caution to be certain that an examination of the device will comply with the Fourth Amendment and other applicable laws.

11. The DEVICE is currently being stored at a temporary evidence storage safe located in the ATF office at 201 Third St. NW, Albuquerque, NM. The device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as it was when the device first came into the possession of ATF.

## **TECHNICAL TERMS**

1. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer

a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media includes

SIM cards, flash memory cards, or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as

      wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

  f.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

1. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

## **CONCLUSION**

1. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the DEVICE described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Lisa Gaul
Special Agent
Bureau of Alcohol, Tobacco,
Firearms and Explosives

Subscribed and sworn to before me
On December 7, 2015:

STEVEN YARBROUGH
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

The property to be searched is a SAMSUNG WIRELESS TELEPHONE, MODEL: SM-G360T1, FCC ID: A3LSMG360T, to include the installed S/D card, San Disk 64 gigabytes, serial number 5133DR33T15G , hereinafter referred to as the "DEVICE." The DEVICE is currently located at the Bureau of Alcohol, Tobacco, Firearms, and Explosives Albuquerque Field Office.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1. All records on the DEVICE described in Attachment A that relate to violations of 18 U.S.C. 922, Federal Firearms laws, including:

    a. Information related to firearms possession, trafficking, and/or use.

    b. Any information related to sources of firearms (including names, addresses, phone numbers, or any other identifying information);

    c. Financial records related to purchases of firearms and ammunition.

    d. Any subscriber information for the DEVICE;

    e. Any photographs, video and audio files related to the purchase, possession and/or use of firearms and ammunition;

    f. Any text messages, email messages, chats, multimedia messages, installed applications or other electronic communications related to the purchase, possession and/or use of firearms and ammunition;

    g. Any documents, spreadsheets, calendar, note, password, dictionary or database entries related to the purchase, possession and/or use of firearms and ammunition;

      h.  Any internet or browser entries or history related to the purchase of firearms and ammunition;

2.    Evidence of user attribution showing who used or owned the DEVICE at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.